IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GUADALUPE SEPULVADA, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BAKER HUGHES OILFIELD )<br>OPERATIONS, INC., )<br>)<br>Defendant. ) | Case No. CIV-04-699-L |

## **O R D E R**

Plaintiff Guadalupe Sepulvada, Jr. brings this action alleging that he was subjected to a hostile work environment and was discharged from his employment based on his race and/or national origin – Hispanic – in violation of federal law.  This matter is before the court on the Motion for Summary Judgment filed by defendant Baker Hughes Oilfield Operations, Inc.  Plaintiff has responded to the dispositive motion and defendant filed a reply brief.  The court has carefully reviewed the briefs and exhibits submitted by the parties.  Based upon this review, the court determines that defendant is entitled to summary judgment as a matter of law on plaintiff's claims.[1]

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[1] On June 29, 2005, a Stipulation of Dismissal was filed with respect to plaintiff's state law negligence claims.  Although these claims were discussed in the summary judgment briefs of the parties, this order need not address these dismissed claims, other than to incorporate the Stipulation of Dismissal in the court's judgment.

that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509, 91 L. Ed. 2d 202 (1986). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553; Applied Genetics Int'l. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The non-moving party must point to specific facts, "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves," to avoid summary judgment. Celotex, 477 U.S. at 324. Such evidence includes reference to affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). The burden is not an

onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court.  <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 672 (10th Cir. 1998).  Although the district court has the discretion to go beyond the referenced portions of the supporting material, it is not required to do so.  <u>Id.</u>

In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.  <u>Bryant v. O'Connor</u>, 848 F.2d 1064, 1067 (10th Cir. 1988).  The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party.  Allegations alone will not defeat summary judgment.  <u>Cone v. Longmont United Hosp. Ass'n.</u>, 14 F.3d 526, 530 (10th Cir. 1994).

In support of its Motion for Summary Judgment, defendant has provided the following statement of material undisputed facts (citations to the record are omitted):

1.  On February 1, 1998, plaintiff was hired as a Region Mechanic II for Baker Atlas (the "Company"), an operating division of Baker Hughes Oilfield Operations, Inc.

2.  In or about April of 2000, plaintiff was promoted to the position of Operations Electrical mechanical Technician Senior.

3.  In or about September of 2001, plaintiff began reporting to Johnny Covalt ("Covalt") (Caucasian), Cased Hole Operations Manager, Mid-Continent Region. Plaintiff enjoyed working for Covalt.

4.  On February 15, 2002, Covalt prepared and reviewed plaintiff's Performance Development Plant ("PDP") with plaintiff. In his PDP, plaintiff stated that he was "very pleased" with Covalt as his supervisor. Plaintiff further stated that Covalt provided clear guidance to him, provided the resources he needed to do his job, provided positive feedback, helped remove institutional obstacles to performance, and provided open communication. In addition, plaintiff stated that "[p]utting Johnny Covalt in charge was the best that could of happened to Baker Atlas."

5.  On March 3, 2002, Covalt approved a merit pay increase for plaintiff. Plaintiff also received pay increases on March 4, 2000, April 16, 2000, and August 11, 2000.

6.  During his employment with Baker Atlas, plaintiff was issued a Ford F-250 Company truck to drive during work hours and during non-working hours on a limited basis.

7.  On February 18, 2003, Covalt reviewed with plaintiff his Individual Health, Safety, & Environmental ("HSE") Plan for the review period starting January 1, 2003, and ending December 31, 2003. One of plaintiff's safety

assignments was to have zero motor vehicle accidents in the Company truck he was assigned. Plaintiff understood and agreed to this requirement.

8. Plaintiff completed the Company's HSE training, which covered all of Baker Atlas' safety policies related to driving Company vehicles.

9. Plaintiff was aware of the three safety policies at issue in this lawsuit: (1) the Reverse Parking policy; (2) the policy prohibiting employees from leaving the scene of an accident in a Company vehicle; and (3) the policy requiring employees to immediately report an accident in a Company vehicle to their supervisor.

10. Plaintiff understood that he was required to conform with Company policies while he was a Baker Atlas employee, and that he could be terminated if he did not comply with Company policies.

11. The Reverse Parking policy, which plaintiff received a copy of, requires employees to park so that their next move is forward. The purpose of the policy is to prevent vehicular accidents from backing into other vehicles. Accordingly, employees are required to either back into parking spaces or pull through to any empty parking space in front of them so that the employee's next move will be forward upon exiting the parking space.

12. The Company's policies requiring employees to stay at the scene of an accident and report the accident to their supervisor immediately apply to all

accidents in Company vehicles, regardless of whether the employee observes damage to the vehicles involved in the accident.

13. On the evening of Sunday, April 13, 2003, plaintiff was involved in an accident in his Company vehicle. The accident occurred in a Lowe's parking lot in Norman, Oklahoma.

14. Plaintiff did not back into his parking space at Lowe's or park so that his first move was forward when he exited the parking space.

15. When plaintiff parked in the parking space, there were no other vehicles around him. However, when he exited the Lowe's store, the parking lot was full of people and there was a car parked in the space in front of him.

16. As plaintiff was backing out of the parking space, he hit an unoccupied truck that was parked behind him. Plaintiff knew that he hit the other vehicle because he felt his truck bump something and stop suddenly.

17. After he hit the other vehicle, plaintiff got out of his truck and spent approximately two or three minutes surveying the two vehicles. During his brief inspection, plaintiff did not see any damage to either of the vehicles.

18. Despite the fact that plaintiff could have used his cell phone or the telephone at Lowe's to call Covalt from the accident scene, he left the scene of the accident without reporting it to anyone. Plaintiff understood that he could call his supervisor any time of day and day of the week to report an accident.

Moreover, plaintiff had Covalt's business cell phone number and had previously called Covalt at this number.

19. After leaving the scene of the accident, plaintiff went home and called the Lowe's store to report the accident. He told the manager that "if there was any damage to any vehicles out there that anybody would report, to have them call [him]." The reason plaintiff called the Lowe's store when he returned home was that he was not sure whether there was damage to the other vehicle.

20. Plaintiff did not report the accident to his supervisor immediately. Rather, he waited until Monday, April 14, 2003, to report the accident to Covalt. Plaintiff told Covalt that he backed into a vehicle and that he did not see any damage. (Covalt recalls that plaintiff told him the accident occurred in a Target parking lot.)

21. Because plaintiff failed to report the accident immediately, Covalt was prevented from investigating the accident at the scene.

22. On April 23, 2003, Covalt received a copy of a letter from the Norman Police Department to Donlen Trust, the company from which Baker Atlas leases its vehicles.

23. The letter, dated April 15, 2003, stated that police were investigating an accident, which occurred on the evening of April 13, 2003, involving the Company truck issued to plaintiff.

24. Because the letter requested immediate contact with Officer Laird of the Norman Police Department regarding the accident, Covalt called Officer Laird on April 23, 2003, to discuss the accident. Covalt told Officer Laird that plaintiff was the driver of the vehicle, and that he would have plaintiff contact him right away. Officer Laird told Covalt that several witnesses saw plaintiff's truck hit an adjacent parked vehicle and then speed away.

25. After Covalt instructed plaintiff to contact Officer Laird, plaintiff called Officer Laird, met with him at plaintiff's house, and completed an accident report.

26. Because the information Officer Laird reported to Covalt regarding the accident differed from what plaintiff had reported, including the fact that witnesses had seen plaintiff "hit and run," Covalt reported the accident to Jack Wasson ("Wasson") (Caucasian), HSE Manager, on April 23, 2003. Wasson then reported the accident to James McNeilly ("McNeilly") (Caucasian), Regional Manager for Continental U.S., Covalt's direct supervisor.

27. Wasson investigated plaintiff's accident.

28. After discussing the accident with Wasson, Covalt and Ricks, McNeilly came to the conclusion that plaintiff had violated three Company policies in a single incident: (1) the Reverse Parking policy; (2) the policy requiring employees to report accidents in Company vehicles immediately; and (3) the policy prohibiting employees from leaving the scene of an accident in a Company vehicle.

29. Plaintiff violated the Reverse Policy by failing to park so that his next move would be forward, as required by the policy.

30. In addition, plaintiff left the scene of the accident and failed to report the accident to Covalt until the day following the accident.

31. As a result of plaintiff's three policy violations, McNeilly determined that plaintiff's employment should be terminated.

32. On April 24, 2003, the day after McNeilly was notified of the accident, plaintiff was terminated. McNeilly was the decision-maker in plaintiff's termination, and Ricks, Covalt and Carlos Luna (Hispanic), Human Resources Manager, signed off on the termination.

33. Covalt communicated the termination decision to plaintiff. During the termination meeting, Covalt told plaintiff that he was being terminated because he violated the Company's Reverse Parking policy, failed to report the accident immediately, and left the scene of the accident.

34. Plaintiff's job title at the time of his termination was Tech Electro Mech III. He was a non-supervisory employee. Baker Hughes eliminated plaintiff's position after his termination. No employee was hired to replace plaintiff and no employees assumed plaintiff's duties as Tech Electro Mech III.

35. Plaintiff was issued citations for improper backing, leaving the scene of a property damage accident, and excessive speed in connection with the accident. Plaintiff hired an attorney and ultimately got the citations for leaving the

scene and improper backing dismissed. However, his excessive speed citation was not dismissed and he was required to pay a fine.

36. From approximately June of 2003 through April of 2004, plaintiff operated his own business, called Renegade Truck Repair.

37. Plaintiff performed maintenance work for the following Baker Atlas employees during this time: Jerry "Skip" Boevers (Caucasian), Pipe Recovery Manager, Michael Gregory (Caucasian), Mid-Continent Tool Asset & Truck Maintenance Manager, and Dale Grange (Caucasian), Field Engineer General.

38. Plaintiff generally performed the maintenance work at his own shop, using his own equipment. However, when asked to repair a vehicle on the Company's premises, plaintiff performed the work at Baker Atlas.

39. Plaintiff was not an employee of Baker Atlas at this time.

40. McNeilly and Covalt were not involved in the decision to utilize plaintiff's services after his termination.

41. During his employment with Baker Atlas, plaintiff was aware of the Company's Equal Employment Opportunity policy, which prohibits discrimination.

42. Plaintiff was also aware that if he was concerned about discrimination, he should notify his immediate supervisor, department head, or Human Resources.

43.  In addition, plaintiff was aware of the Company's policy prohibiting harassment, and that he should report a complaint of harassment to his supervisor or a Human Resources manager.

Defendant moves for summary judgment in its favor on plaintiff's race discrimination claim on the grounds that (1) plaintiff cannot establish a prima facie case of discrimination, (2) plaintiff was terminated for a legitimate non-discriminatory reason – violation of company policies – and (3) plaintiff has failed to come forward with sufficient evidence of pretext.  Defendant also argues that it is entitled to summary judgment on plaintiff's hostile work environment claim as well as any claim under 42 U.S.C. §1981 or for retaliation.

It is well established that a plaintiff may establish discrimination by means of the three-part framework enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under the McDonnell Douglas analysis, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).  If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the adverse employment action. Id. Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate

reasons offered by the defendant were not its true reasons but were a pretext for discrimination.  Id.

Plaintiff may demonstrate a prima facie case of racial discrimination in a number of ways, including a showing that (1) he is a member of a racial minority, (2) his job performance was satisfactory, (3) he was adversely affected by defendant's employment decision and (4) similarly situated non-minority employees were treated differently from him.  Goodwin v. General Motors, 275 F.3d 1005, 1012 (10th Cir. 2002).

Although hostile work environment is not explicitly mentioned in Title VII, it is well established that a victim of a racially hostile or abusive work environment may bring a cause of action pursuant to 42 U.S.C. §2000e-2(a)(1).  Bolden v. PRC, Inc., 43 F.3d 545, 550 (10th Cir. 1995) (citations omitted).  To constitute actionable harassment, the conduct must be sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working environment.  Id. at 550-51.  Specifically, it must be shown that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions or privileges of employment, and (2) the harassment was racial or stemmed from racial animus.  Id. at 551. The plaintiff must show more than a few isolated incidents of racial enmity.  Id.  Rather than sporadic racial slurs, plaintiff must show a steady barrage of opprobrious racial comments. Id.

Here, defendant argues that plaintiff has failed to meet his initial burden of proving a prima facie case of discrimination. However, for purposes of summary judgment, the court will proceed as though plaintiff has established a prima facie case. Assuming plaintiff has established a prima facie case of discrimination, defendant has rebutted plaintiff's prima facie case by articulating a legitimate, nondiscriminatory reason for terminating him. Thus, it is now incumbent upon plaintiff to present sufficient evidence that the proffered reason was a pretext for discrimination. *See* Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). To establish pretext, a plaintiff must show "either . . . that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 256 (1981). Evidence of pretext may include, but is not limited to, the following: prior treatment of plaintiff, the employer's policy and practice including statistical data, disturbing procedural irregularities, and the use of subjective criteria. Simms v. Oklahoma ex rel Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999). Pretext can be shown by weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. Hardy v. S.F. Phosphates, Ltd. Co., 185 F.3d 1076, 1079 (10th Cir. 1999). The plaintiff's facts

13

must be strong enough to show that a discriminatory intent more likely motivated defendant than defendant's stated reason.  Cone v. Longmont United Hosp. Assoc., 14 F. 3d  526, 530 (10th Cir. 1994).

Plaintiff has the ultimate burden of proving that defendant discriminated against him.  See Ortega v. Safeway Stores, Inc., 943 F.2d 1230, 1237 (10th Cir. 1991).  At the summary judgment stage, the court determines whether the evidence, interpreted in the light most favorable to plaintiff, "could persuade a reasonable jury that the employer had discriminated against the plaintiff."  Jones v. Unisys Corp., 54 F.3d 624, 632 (10th Cir. 1995).  The "mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create dispute of fact that is 'genuine.'" Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).

In attempting to controvert the defendant's statement of facts, plaintiff has provided his own "Statement of Facts Creating a Controversy."  Additionally, plaintiff has provided a "Response" to defendant's statement of undisputed facts in which he "denies" or "denies as worded" several paragraphs of defendant's statement.  While the plaintiff's brief superficially appears to identify material factual disputes, upon closer inspection the court concludes that he has not specifically controverted the properly submitted summary judgment evidence and that a genuine factual dispute does not exist.

In a pretext determination, it is the manager's perception of the employee's performance that is relevant, not the plaintiff's subjective evaluation of his own relative performance. Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996). Furthermore, the court's role is not to act as a "super personnel department" that second guesses employers' business judgments. Simms, 165 F.3d at 1330. Plaintiff asserts that he had a good faith belief that no damage had been caused by the "bump" in the Lowe's parking lot, and that it was therefore not necessary for him to immediately contact his supervisor. Plaintiff does not dispute that he did not immediately call his supervisor. Plaintiff relies on his own subjective perceptions of improper reasons for his termination, however, his own beliefs or allegations are insufficient to defeat defendant's motion for summary judgment. *See* Metro Oil Co. v. Sun Refining & Mktg. Co., 936 F.2d 501, 504 (10th Cir. 1991). A disagreement with an employer's adverse employment decision, even if held in good faith, is not sufficient to establish pretext. Plaintiff has failed to meet his burden of coming forward with sufficient evidence to identify such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the defendant's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the defendant did not terminate plaintiff for the asserted non-discriminatory reason. Even in viewing the evidence of plaintiff's belief about his own behavior in the light most favorable to plaintiff, the court finds that plaintiff

has failed to show either that the termination decision was more likely motivated by an improper reason or that the proffered explanation for the termination is unworthy of belief. Under the facts presented, the court finds that a reasonable jury would not find defendant's proffered reasons for termination unworthy of credence and hence infer that defendant did not act for the asserted non-discriminatory reasons.

Plaintiff's attempt to show pretext based on favorable treatment of other employees is also insufficient. One of the established methods of proving pretext is to show that the employer treated the plaintiff differently from other similarly situated employees who violated work rules of comparable seriousness. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000). The plaintiff bears the burden of establishing the other employees are actually "similarly situated." Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1178 (10th Cir. 2000). Plaintiff has attempted to assert that his non-minority co-workers Ron Sauers, Johnny Covalt and Bret Sisemore were similarly situated to him and yet were essentially not disciplined when investigation revealed that they had violated the "Reverse First" policy. Plaintiff argues that the comparator's actions were similar to his in that they each "made a bad decision before parking then had a collision while moving in reverse[.]" The court has reviewed the record regarding the alleged similarly situated employees but agrees with defendant that plaintiff has failed to demonstrate that he and his alleged comparators violated

work rules of comparable seriousness. There is no evidence showing that these or any other non-minority co-workers were found to have violated three Company policies in a single incident, (*i.e.,* (1) the Reverse Parking policy; (2) the policy requiring employees to report accidents in Company vehicles immediately; and (3) the policy prohibiting employees from leaving the scene of an accident in a Company vehicle) and yet were not terminated. Factually, it appears that the comparator's accidents involved detectable property damage as opposed to plaintiff's accident which allegedly did not result in obvious damage to the other vehicle. Plaintiff has offered no evidence of a non-minority worker who similarly concluded that since no damage had been caused it was not necessary to immediately contact his supervisor and whether such a person was similarly treated. Although the court understands that plaintiff believes that the accidents of Covalt, Sauer and Sisemore were similar to his, the court finds as a matter of law that plaintiff has failed to meet his burden of demonstrating that these persons were actually "similarly situated." Furthermore, "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co., 853 F.2d at 772. In determining whether the proffered reason for a decision was pretextual, the court examines the facts "as they appear to the person making the decision." Kendrick, 220 F.3d at 1229.

Regarding plaintiff's claim based on a racially hostile work environment, the court finds that this claim is jurisdictionally barred since it is undisputed that plaintiff's Charge of Discrimination (Exhibit 7, Defendant's Motion for Summary Judgment) makes no allegations of a hostile work environment.  Even if the court were to consider such a claim, plaintiff has failed to support this allegation with sufficient detail.  Plaintiff's response brief alleges that plaintiff was subjected to improper racial slurs by a Baker Hughes co-employee and that the comments were consistent and continuous whenever the particular employee was in plaintiff's presence.  In reviewing the portions of plaintiff's deposition offered in support of this allegation, however, the court notes that plaintiff cannot recall the name of the co-employee and although he testified that he interacted with this employee "almost every day" he does not testify that the allegedly improper comments were made every day.  Plaintiff could not pinpoint the number of times each comment was made.  (Exhibit 2, Defendant's Motion for Summary Judgment, pp. 167, 169).  The court also finds that neither the unsworn affidavit of plaintiff's co-worker Alvaro Gutierrez (Exhibit 3, Plaintiff's Response to Defendant's Motion for Summary Judgment), nor the amended, but incomplete, notarized version (Exhibit to Plaintiff's Response to Defendant's Motion to Strike and Alternative Motion for Leave to Supplement Plaintiff's Response to Defendant's Motion for Summary Judgment) of the Gutierrez affidavit are sufficient to raise a genuine issue of material fact with respect to a hostile work

environment claim since Mr. Gutierrez, too, fails to provide details as to when the alleged comments occurred. In short, plaintiff has not presented evidence of a steady barrage of opprobrious racial comment required to show a racially hostile work environment.  The vague and incomplete evidence presented by plaintiff cannot be considered the type of pervasive conduct required for this claim to survive.  Therefore, even assuming for the sake of argument that plaintiff preserved a claim based on hostile work environment, defendant is entitled to summary judgment on this claim.

Similarly, the court concludes that to the extent plaintiff has attempted to assert a claim based on retaliation, this claim is also jurisdictionally barred since it is undisputed that plaintiff's Charge of Discrimination (Exhibit 7, Defendant's Motion for Summary Judgment) makes no allegation of retaliation.  Even if the court were to consider such a claim, it would fail.  Plaintiff acknowledges that Jim McNeilly made the ultimate decision to terminate him.  Plaintiff has not shown, however, that Mr. McNeilly was aware of plaintiff's complaints regarding the allegedly improper racial comments made by the unknown co-worker.

In summary, Defendant's Motion for Summary Judgment **[Doc. No. 41]** should be and is hereby **GRANTED** and defendant is entitled to judgment on plaintiff's claims for discrimination alleged in Counts I and IV of the Amended Complaint.  Pursuant to the June 29, 2005 Stipulation of Dismissal, plaintiff's negligence claims asserted in Counts II and III of the Amended Complaint are

**DISMISSED WITH PREJUDICE.**  In light of this order, Defendant's Motion to Strike Affidavit of Alvaro Gutierrez **[Doc. No. 56]** is **DENIED**; Plaintiff's Alternative Motion for Leave to Supplement Plaintiff's Response to Defendant's Motion for Summary Judgment **[Doc. No. 63]** is **GRANTED.**  Defendant's Second Application to Extend All Remaining Deadlines and Motion for Continuance **[Doc. No. 66]** is **MOOT.**  Judgment will issue on a separate document in accordance with the Federal Rules of Civil Procedure.

It is so ordered this 5th day of August, 2005.

_Tim Leonard_
TIM LEONARD
United States District Judge